## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 24 2016, 8:49 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Anthony C. Lawrence
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General

Brian Reitz
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Gregory Manis,

*Appellant-Respondent,*

v.

State of Indiana,

*Appellee-Petitioner.*

February 24, 2016

Court of Appeals Case No.
48A02-1506-CR-645

Appeal from the Madison Circuit Court

The Honorable David A. Happe, Judge

Trial Court Cause No.
48C04-1209-FC-1661

**Bradford, Judge.**

# Case Summary

[1]     In 2012, Appellant-Respondent Gregory Manis was charged with one count of Class D felony theft and eighty-seven counts of Class C felony forgery. In charging Manis, Appellee-Petitioner the State of Indiana (the "State") alleged that Manis stole nearly $80,000 from the Utility Workers Union of America Local #108 (the "Union") in order to satisfy his gambling addiction. Manis subsequently pled guilty to one count of Class D felony theft and one count of Class C felony forgery. The trial court sentenced Manis to an aggregate term of seven years with one year executed in the Department of Correction ("DOC"), one year executed on work release, and five years suspended to probation. As a term of his probation, Manis was ordered to pay approximately $80,000 in restitution to the Union.

[2]     On March 12, 2014, the State filed a petition seeking to revoke Manis's probation. In this petition, the State alleged that Manis had violated the terms of his probation by failing to pay the ordered restitution. Following an evidentiary hearing, the trial court determined that the State had proven by a preponderance of the evidence that Manis had violated the terms of his probation. The trial court then revoked Manis's probation and ordered Manis to serve two years of his previously-suspended sentence in the DOC.

[3]     On appeal, Manis contends that the evidence presented by the State is insufficient to prove that he violated the terms of his probation. Concluding that Manis recklessly, knowingly, or intentionally failed to make restitution payments, we affirm.

# Facts and Procedural History

[4] On September 4, 2012, the State charged Manis with one count of Class D felony theft and eighty-seven counts of Class C felony forgery. In charging Manis, the State alleged that Manis stole nearly $80,000 from the Union in order to satisfy his gambling addiction. On July 1, 2013, Manis pled guilty to one count of Class D felony theft and one count of Class C felony forgery. That same date, trial court sentenced Manis to an aggregate term of seven years with one year executed in the DOC, one year executed on work release,[1] and five years suspended to probation.

[5] As a term of his probation, Manis was ordered to pay restitution to the Union. On August 26, 2013, the trial court determined that Manis owed $79,641.97 in restitution. The trial court also ordered that the probation department conduct yearly assessments of Manis's "payments on said restitution." Appellant's App. p. 99. On January 5, 2015, the trial court held a hearing to review Manis's restitution payments. During this hearing, the trial court ordered the probation department to review Manis's payment history and file a violation if warranted.

[6] On March 12, 2015, the State filed a petition seeking to revoke Manis's probation. The trial court conducted an evidentiary hearing on the State's petition on May 18, 2015. During this hearing, the State presented evidence

---

[1] Manis's work release placement was subsequently changed to in-home detention. On November 25, 2014, a notice was filed stating that Manis had completed the in-home detention portion of his sentence.

demonstrating that Manis was employed from June 2014 through February 2015, during which time he earned the equivalent of $26,000 per year; he also received monthly retirement payments of $1077; and an annuity payment which the trial court noted "would've been a big check." Tr. p. 10. While Manis did not remember the exact amount he received in the annuity payment, he admitted that he frittered the money away by gambling. Despite these multiple sources of income, Manis paid only $240 towards the restitution order of his own volition.[2]

[7] At the conclusion of the evidentiary hearing, the trial court determined that Manis had violated the terms of his probation by failing to pay restitution as ordered. In reaching this determination, the trial court stated the following:

> Okay. All right. Well I appreciate that thought from probation, but, uh, Mr. Manis isn't gonna comply with that. He's had the ability to comply already. I've lectured him about this being his important priority to pay restitution. He stole nearly eighty thousand dollars ($80,000.00) from innocent people to fuel his addiction. And he's had the ability to pay and he's just chose not to pay. There's only one (1) resolution for someone who just willfully thumbs their nose at an obligation that they have and refused to pay, and that's what Mr. Manis has done. There needs to be some additional prison time here. That's the only reasonable result here. There is no way that we would expect Mr. Manis to do anything different if we did nothing different with him. I frankly would expect that Mr. Manis would say I'm disabled again now and I'm not able to pay. I can't prove that, I

[2] Pursuant to court order, $1000 from Manis's bond was also applied toward the restitution order.

won't bring any documentation, but take my word for it, I'm disabled and I can't pay this. That's what I would expect from Mr. Manis based on past history. I'm very disappointed to learn that there was an eight (8) month period of time when Mr. Manis was earning at the rate of twenty-six thousand dollars ($26,000.00) a year, and other than the thousand dollar ($1,000.00) bond payment that was taken from him, he's paid two hundred and forty dollars ($240.00) toward the restitution. He has put restitution almost at the lowest possible priority he could place it, and that's not acceptable. The reason that Mr. Manis got the benefit of the length of suspended time and community corrections time he had was so that he could work toward paying restitution, and he simply elected not to do that, and that's not acceptable and there are consequences for it. Mr. Manis, I'm very, very disappointed that you made those choices. Those choices have left me without a choice here. The only way to adequately address your behavior over the course of your sentence is to impose [DOC] time.

Tr. pp. 61-63. The trial court then revoked Manis's probation and ordered him to serve two years of his previously-suspended sentence in the DOC. This appeal follows.

# Discussion and Decision

[8] Manis contends that the State failed to present sufficient evidence to support the revocation of his probation.

> Probation is a matter of grace left to trial court discretion, not a right to which a criminal defendant is entitled. The trial court determines the conditions of probation and may revoke probation if the conditions are violated. Once a trial court has exercised its grace by ordering probation rather than

incarceration, the judge should have considerable leeway in deciding how to proceed. If this discretion were not afforded to trial courts and sentences were scrutinized too severely on appeal, trial judges might be less inclined to order probation to future defendants. Accordingly, a trial court's sentencing decisions for probation violations are reviewable using the abuse of discretion standard. An abuse of discretion occurs where the decision is clearly against the logic and effect of the facts and circumstances.

*Prewitt v. State*, 878 N.E.2d 184, 188 (Ind. 2007) (internal citations omitted).

A probation revocation hearing is in the nature of a civil proceeding. Therefore, an alleged violation of probation only has to be proven by a preponderance of the evidence. When we review the determination that a probation violation has occurred, we neither reweigh the evidence nor reassess witness credibility. Instead, we look at the evidence most favorable to the [trial] court's judgment and determine whether there is substantial evidence of probative value supporting revocation. If so we will affirm.

*Whatley v. State*, 847 N.E.2d 1007, 1010 (Ind. Ct. App. 2006) (internal citations and quotation omitted). The violation of a single condition of probation is sufficient to revoke probation. *Wilson v. State*, 708 N.E.2d 32, 34 (Ind. Ct. App. 1999).

[9] In order for a probationer to be found to have violated the terms of their probation by failing to comply with a condition that imposes a financial obligation, "the probationer must be shown to have recklessly, knowingly, or intentionally failed to pay." *Smith v. State*, 963 N.E.2d 1110, 1113 (Ind. 2012).

In *Smith*, the Indiana Supreme Court determined that "'[a]s to the fact of violation, the statute expressly imposes the burden of proof upon the State.'" *Id*. (quoting *Runyon v. State*, 939 N.E.2d 613, 616 (Ind. 2010)).

> Noting that revoking probation for violating a financial obligation requires proof of both the underlying violation and the defendant probationer's state of mind, [the Indiana Supreme Court] held, "it is the State's burden to prove both the violation and the requisite state of mind in order to obtain a probation revocation." [*Runyon*, 939 N.E.2d at 616]. With respect to the ability to pay, [the Indiana Supreme Court] held that it is the defendant probationer's burden "to show facts related to an inability to pay and indicating sufficient bona fide efforts to pay so as to persuade the trial court that further imprisonment should not be ordered." *Id*. at 617 (citing *Woods v. State*, 892 N.E.2d 637, 641 (Ind. 2008)).

*Id*.

[10] In the instant matter, the record demonstrates that during the probationary period, Manis had at least two sources of income, yet paid very little towards the restitution order. While not admitting to having violated the terms of his probation, Manis does not dispute that he has paid very little towards the restitution order. He claims, however, that the evidence presented during the revocation hearing was insufficient to prove that he had the requisite mental state or that he had the ability to pay.

# A. Requisite Mental State

[11] In challenging the sufficiency of the evidence to prove that he acted with the requisite mental state, Manis alleges that the record demonstrates that he made "reasonable bona fide efforts" to pay restitution. Appellant's Br. p. 13. Our review of the record indicates otherwise.

[12] "'[B]ecause the phrase 'recklessly, knowingly, or intentionally' appears in the disjunctive and thus prescribes alternative considerations, the state of mind requirement may be satisfied by adequate evidence that a defendant's failure to pay a probation imposed financial obligation was either reckless, knowing, or intentional." *Smith*, 963 N.E.2d at 1113 (quoting *Runyon*, 939 N.E.2d at 616). Indiana Code section 35-41-2-2 provides that:

> (a) A person engages in conduct "intentionally" if, when he engages in the conduct, it is his conscious objective to do so.
>
> (b) A person engages in conduct "knowingly" if, when he engages in the conduct, he is aware of a high probability that he is doing so.
>
> (c) A person engages in conduct "recklessly" if he engages in the conduct in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct.

"Because knowledge is a mental state of the actor, it may be proved by circumstantial evidence and inferred from the circumstances and facts of each case." *Id*. (citing *Young v. State*, 761 N.E.2d 387, 389 (Ind. 2002)).

[13]  In claiming that he did not act with the requisite mental state, Manis seems to argue that he could not have knowingly, intentionally, or recklessly failed to pay the ordered restitution because the relevant documents were ambiguous with respect to the rate at which he was to pay the ordered restitution. Manis's claim in this regard, however, is without merit. The document setting forth the terms of Manis's probation clearly states that payment was to be made at the rate of "no less than 25%" of Manis's "income per week." Appellant's App. p. 100. In addition, the trial court's sentencing order clearly stated that Manis was "ordered to pay Restitution at a rate of no less than 25% of [his] income." Appellant's App. p. 99. While these documents did not set forth a specific payment rate, they clearly set forth an unambiguous payment floor.

[14]  Again, during the probation revocation hearing, the State provided evidence demonstrating that Manis was employed from June 2014 through February 2015, a period of nine months, during which time he earned the equivalent of $26,000 per year. He also received monthly retirement payments of $1077 and an annuity payment which the trial court noted "would've been a big check." Tr. p. 10. While Manis did not remember the exact amount he received in the annuity payment, he admitted that he frittered the money away by gambling. Despite these multiple sources of income, Manis paid only $240 towards the restitution order of his own volition. Notably, the $240 paid by Manis was less than 25% of one month of his monthly $1077 retirement payment, much less any additional income earned during his nine-month period of employment and the sum received from his annuity payment. The record further establishes that

Manis was aware of the order that he pay nearly $80,000 in restitution but made the conscious decision to gamble and pay other claimed expenses rather than pay the ordered restitution.

[15] Furthermore, to the extent that Manis relies on our prior decision in *Mauch v. State*, 33 N.E.3d 387 (Ind. Ct. App. 2015), we find such reliance to be unavailing. In *Mauch*, we concluded that the trial court had abused its discretion in revoking the appellant's probation. 33 N.E.3d at 391. In that case, Mauch was a seventy-six years old man who suffered from many health problems which impacted his ability to work and who received only $1134 per monthly in income. *Id*. However, despite suffering from numerous health issues and having a limited amount of monthly income, Mauch made consistent monthly restitution payments, except for a few months when he was hospitalized and received home health care. *Id*.

[16] The record paints a very different picture in the instant matter. Unlike Mauch, Manis did not ever make consistent restitution payments. In fact, as of the date of the revocation hearing, Manis had only paid $240 toward the nearly $80,000 restitution order of his own volition, despite having multiple sources of income during the probationary period. We therefore conclude that the State proved that Manis acted with a knowing mental state.

## B. Ability to Pay

[17] Manis also claims that the trial court erred in finding that he failed to prove that he was unable to pay the ordered restitution. In support, Manis argues that he

presented evidence demonstrating that was unable to pay the ordered restitution because he was disabled and unable to work and his expenses outnumbered his income.

[18] With respect to his claimed inability to work, Manis produced two notes from doctors which he claims proves he was unable to work during the probationary period. The first note was dated January 29, 2014 and indicated that Manis was unable to work for one month. The second note was dated March 7, 2014, and indicated that because Manis was recovering from an intracranial infection, he "should not be working or in an environment where there is potential risk for injury." Appellant's App. p. 110. The March 7, 2014 note did not specify a length of time during which Manis was to refrain from working. However, it appears that Manis recovered from his intracranial infection as he subsequently maintained employment from June of 2014 through February of 2015. Manis provided no additional documentation indicating that he was unable to work as of the date of the probation hearing.

[19] With respect to his claimed disability, Manis asserted that he suffered from cognitive and memory problems. Manis also asserted that he had filed for disability benefits. Manis, however, provided no documentation to support either of these assertions, instead relying on his own self-serving testimony and the testimony of his sister and a friend.

[20] Manis also claimed to have significant other financial obligations which affected his ability to pay the ordered restitution. Manis indicated that he had a

monthly child support obligation of $688 per month. He subsequently acknowledged, however, that his monthly child support obligation had, at some point, been reduced. Manis provided no documentation proving that he ever had a $688 monthly child support obligation or indicating the amount to which his monthly child support obligation had been reduced. Manis also claimed that his monthly living expenses included $600 for rent plus additional sums for food, gas, and other normal expenses. Manis, however, acknowledged during the revocation hearing that he receives $172 per month in food stamps to help cover expenses relating to food.

[21] Manis's claim that the trial court erred in finding that he failed to prove that he was unable to pay restitution amounts to little more than an invitation to reweigh the evidence. Again, in arguing that he was unable to pay the ordered restitution, Manis relied almost entirely on his own self-serving testimony and the testimony of his sister and a friend. The trial court, acting as the trier-of-fact, was in the best position to judge Manis's credibility as well as the credibility of these other witnesses. We will not disturb the trial court's credibility determinations or reweigh the evidence on appeal. *See Whatley*, 847 N.E.2d at 1010.

# Conclusion

[22] Again, "[i]t is the probationer's burden 'to show facts related to the inability to pay and indicating sufficient bona fide efforts to pay so as to persuade the trial court that further imprisonment should not be ordered.'" *Smith*, 96. N.E.2d at

1114 (quoting *Runyon*, 939 N.E.2d at 617). Manis failed to carry this burden. As such, we conclude that the trial court did not abuse its discretion in revoking Manis's probation and ordering Manis to serve two years of his previously-suspended sentence in the DOC.

[23] The judgment of the trial court is affirmed.

Baker, J., and Pyle, J., concur.